**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| Leonard Hicks, Jr., | Case No. 3:15 CV 000473 |
|     Plaintiff, | JUDGE JAMES G. CARR |
|   v. | **OPINION AND ORDER** |
| Doctor Stein, *et al.*, | |
|     Defendants. | |

This is a *pro se* civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted the plaintiff leave to proceed *in forma pauperis*.

Under the Prison Litigation Reform Act, the Court is required to dismiss, *sua sponte*, any prisoner action brought under federal law that is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2) and 1915A; *Hill v. Lappin*, 630 F.3d 468, 470 (6th Cir. 2010).

The Court must read a plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept its allegations as true. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

**Background**

The plaintiff is incarcerated in the North Central Correctional Complex (NCCC). He alleges he "was assaulted [and] hit with [an] A-Lock" by another inmate on February 23, 2015, at about 11:30 p.m. The other inmate knocked out the plaintiff's teeth. The plaintiff alleges he struggled with the other inmate and overpowered him until they "were pulled apart," but the inmate came back and assaulted him. He alleges the inmate followed him and threatened him in full view of unnamed

"correctional officers" before the attack, but the officers failed to protect him. He alleges that after the attack, Warden Turner and Deputy Wardens Boyd and Joyce "took no action" and that he was wrongly "sent to R.I.B.," given a "conduct report" for a fight, and sent to segregation, even though witnesses saw that he had been attacked.

The plaintiff further alleges he did not receive adequate medical care for his injuries. He alleges "no doctor," including Doctor Stein and Nurse Dixon, "did any thing" for him; the nurses at the infirmary "took no action . . . except take [his] vidals" [sic]; and the dentist who saw him "told [him there] was nothing he could do except order [him] new teeth." The plaintiff also alleges that Lt. Baumgarner and "other CO's" did not secure his personal property or call "in emergency medical."

Based on these alleged facts, the plaintiff seeks $20 million in damages and injunctive relief under § 1983 against the Director of the Ohio Department of Rehabilitation and Correction Gary Mohr, NCCC Warden Neil Turner, Deputy Wardens Boyd and Joyce, and various prison employees and medical staff, including Sergeants Holycross and Savil, Doctor Stein, the "dentist," Nurse Dixon, Mona Parks, and the "Chief Doctor."

**Analysis**

The plaintiff's complaint will be dismissed because it fails to state a claim on which relief may be granted against any defendant.

To state a claim under §1983, a plaintiff must allege he suffered a violation of a right secured by the Constitution or laws of the United States committed by a person acting under color of state law. *Redding v. St. Edward*, 241 F.3d 530, 532 (6th Cir. 2001).

The plaintiff here has not alleged a plausible constitutional claim based on his allegations that "correctional officers" failed to protect him from the other inmate's assault on him.

Although prison officials have a duty under the Eighth Amendment to "take reasonable measures to guarantee the safety of inmates," including taking reasonable measures "to protect prisoners from violence at the hands of other prisoners," prison officials do not violate a prisoner's constitutional rights every time a prisoner inflicts injury on another. *Farmer v. Brennan*, 511 U.S. 825, 832-34 (1994) (internal quotations omitted).

Rather, a prison official may be liable for a failure to protect an inmate only if the plaintiff shows that the official was "deliberately indifferent" to a serious risk of harm to an inmate.

This requires a plaintiff to show that the official in question was aware of facts from which an inference could be drawn that a substantial risk of harm to the inmate existed **and** that the official actually drew such an inference. *Id*. at 837.

Thus, a prison official who was unaware of a substantial risk of harm to an inmate may not be held liable under the Eighth Amendment, *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (citing *Farmer*, 511 U.S. at 837), and a negligent failure to prevent an attack by other inmates is insufficient to state a claim. *See Davidson v. Cannon*, 474 U.S. 344, 345–48 (1986) (finding that prison officials' negligent failure to heed prisoner's notification of threats from another inmate, followed by an assault, is not a deprivation of constitutional rights).

The plaintiff has not alleged facts plausibly suggesting that any defendant in the case subjectively knew of, and ignored, a serious risk of harm to the plaintiff posed by the other inmate prior to the alleged attack. The plaintiff's allegations that "correctional officers" had notice of threats and failed to protect him are insufficient to allege a plausible constitutional claim in the case.

The plaintiff has also failed to allege a plausible constitutional claim based respecting his medical care.

"Where prison officials are so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain, they impose cruel and unusual punishment in violation of the Eighth Amendment." *Horn by Parks v. Madison Cnty. Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994).

"Deliberate indifference is characterized by obduracy or wantonness – it cannot be predicated on negligence, inadvertence, or good faith error." *Reilly v. Vadlamudi*, 680 F.3d 617, 624 (6th Cir. 2012). Thus, "differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnosis or treatment are not enough to state a deliberate indifference claim." *Ward v. Smith*, 100 F.3d 958, 1996 WL 627724, at *1 (6th Cir.).

Moreover, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 527 F.2d 857, 860 n. 5 (6th Cir. 1976).

The plaintiff's complaint alleges he was seen in the prison "infirmary" after the alleged assault and by a dentist who assessed his injury.

Although the plaintiff appears to contend he was not treated with sufficient urgency and that more should have been done for him (and he appears to be dissatisfied with the dentist's assessment that there was "nothing he could do except order [him] new teeth"), his allegations are insufficient to establish that Dr. Stein, Nurse Dixon, or any other member of the prison's medical staff was "deliberately indifferent" to his medical needs.

At the most, the plaintiff's allegations suggest he is dissatisfied and disagrees with the medical treatment he received. Even assuming the plaintiff's treatment constitutes negligence or medical malpractice under state tort law, his allegations are insufficient to demonstrate that he suffered cruel and unusual punishment within the meaning of the Eighth Amendment.[1]

Finally, the plaintiff has failed to allege any plausible constitutional claim based on the discipline he received after the attack.

Prisoners have narrower liberty interests than other citizens because "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin v. Conner*, 515 U.S. 472, 485 (1995) (internal quotation omitted).

Generally, a prisoner has no liberty interest "in avoiding transfer to more adverse conditions of confinement." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Unless placement in disciplinary confinement is accompanied by a withdrawal of good time credits or presents an unusual hardship on the inmate, no liberty interest is implicated. *Sandin*, 515 U.S. at 478, 484.

Plaintiff does not allege he was sanctioned with the loss of good time credits or an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Id.* at 484. Accordingly, he has not alleged an infringement of a liberty interest for purposes of a constitutional due process claim.[2]

---

[1] The plaintiff has alleged no facts to support his conclusory assertion the defendants "intentionally delayed and denied access to medical care . . .because he was . . . black."

[2] I also note the Sixth Circuit has held that "a prisoner has no constitutional right to be free from false accusations of misconduct." *Jackson v. Hamlin*, 61 Fed. App'x 131, 132 (6th Cir. 2003).

In sum, the plaintiff's allegations are insufficient to allege a viable constitutional claim against any defendant in the case.

The plaintiff's § 1983 claims against Director Mohr, Warden Turner, and Deputy Wardens Boyd and Joyce fail for the additional reason that he has not alleged conduct sufficient to impose liability on these supervisory officials under § 1983.

Liability under § 1983 must be based on more than *respondeat superior*, and a supervisory official cannot be liable merely on the basis of a failure to act. *Shehee v. Lutrell*, 199 F.3d 295, 300 (6th Cir. 1999).

Denying an administrative grievance or failing to remedy unconstitutional conduct of subordinates is an insufficient basis to impose liability on a supervisory official under § 1983. At best, the plaintiff's allegations suggest that Director Mohr, Warden Turner, and Deputy Wardens Boyd and Joyce did not rule in his favor on disciplinary appeals or administrative grievances; such conduct is insufficient to impose liability on these supervisory officials under § 1983.

## Conclusion

For all of the reasons set forth above, the plaintiff's complaint fails to state a claim on which relief may be granted and it is dismissed pursuant to 28 U.S.C. §§1915(e)(2)(B) and 1915A. The Court certifies, pursuant to 28 U.S.C. §1915(a)(3), that an appeal from this decision could not be taken in good faith.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge